LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiffs, FLSA Collective
Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YVETTE WALKER, ALFONSO RUBIO, and ORLANDO COTTMAN, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class*, | Case No.: |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| BROSNAN RISK CONSULTANTS, LTD., | |
| Defendant. | |

Plaintiffs YVETTE WALKER, ALFONSO RUBIO, and ORLANDO COTTMAN ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendant BROSNAN RISK CONSULTANTS, LTD. ("Defendant" or "BROSNAN RISK") and state as follows:

<u>**INTRODUCTION**</u>

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to time-shaving; (2) unpaid overtime wages due to straight time pay; (3) liquidated damages; and (4) attorneys' fees and costs.

2.     Plaintiff WALKER further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including unpaid overtime, due to time-shaving; (2) spread of hours premiums; (3) compensantion for late payment of wages, (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

3.     Plaintiff RUBIO alleges, pursuant to the California Labor Code that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages due to time-shaving, (2) unpaid overtime wages due to straight time pay; (3) unpaid overtime wages, (4) statutory penalties for missed rest breaks, (5) statutory penalties for failure to maintain accurate records and produce accurate wage statements, (6) statutory penalties for failure to timely remit earnings upon end of employment, and (7) attorneys' fees and costs.

4.     Plaintiff COTTMAN alleges, pursuant to Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §333.101, *et seq.*, that he and others are entitled to recover from Defendants: (1) unpaid wages, including  overtime, due to time-shaving; (2) unpaid overtime wages due to straight time pay; (3) liquidated damages; and (4) attorneys' fees and costs.

5.     Defendant operates a security and company under the name "Brosnan Risk Consultants," which provides services to both commercial and residential sites.  Such sites include construction sites, schools and higher education, houses of worship, warehouses, manufacturing companies, hospitality security, and aged care facilities throughout the country.

6.     Plaintiffs, collective plaintiffs, and class members are current and former employees of Defendant, who were victims of Defendant's schemes to underpay employees' hours.  Specifically, Defendant: (i) improperly paid non-exempt employees only for their scheduled hours and/or rounded employees' hours down to deprive employees of their earned

compensation (ii) failed to compensate employees for lunch breaks despite mandating employees to continue working through lunch, (iii) failed to compensate breaks lasting 20 minutes or less, and (iv) would fail to include the hours for 'pick-up-shifts' with an employees' compensation for the week such shift was worked, but instead compensate those hours at a later date at a straight time rate.

7.      Defendant designs the schedule of its employees' shifts to run "back-to-back." For example, if a site requires 24-hour period, one guard could be scheduled to the site from midnight to 8:00 am. The second guard from 8:00 am to 4:00 PM. The final guard from 4:00 PM to midnight. Despite Defendant's schedule not envisioning any overlap between employees, Defendant required security guards to ensure a "relief" guard arrived and was fully debriefed before leaving their post.  As Defendant only paid for scheduled shifts and/or rounded employees' time, this overlapping period between security personnel was always unpaid. Defendant requires employees to stay past their shift to (i) wait for the incoming employee to arrive on site, and (ii) then required the departing employee to debrief the arriving employee before leaving.   Moreover, security guards working at sites catering to customers were required to stay on site, after their scheduled shifts until the last customer exited the building.  This additional wait time, like the wait time for a relief guard, went uncompensated.

8.      Defendant requires that security guards remain tethered to their assigned site during their lunch break for the purpose of continuing to perform security service for the company. These workers stay on – or near – their assigned site and must stay in uniform, and maintain a communication device (e.g., radio or cell phone) in the event of an emergency.  The restrictions placed on employees' break is designed solely for the benefit of the employer and, in their absence, the company would have to hire other employees to cover for the same services. By not

compensating these workers, Defendant receives free labor from Plaintiffs, collective plaintiffs, and class members. That the meal periods inure to the benefit of the employer is particularly evident, as many of Defendant's contracts mandate continuous security, but Defendant only maintains one guard on the premises.  At least once a week supervisors will circulate to each of the sites where Defendant offers services to ensure employees are available at their station.  Failure to be found at the station can result in reprimand and potential termination.

9.      In addition to not receiving free and clear breaks as required by law, Defendant fails to compensate Plaintiffs, collective plaintiffs, and class members for breaks even when these breaks last 20-minutes or less in violation of 29 C.F.R. § 785.18.

10.     Defendant would fail to include the hours for shifts worked by an employee in addition to their scheduled hours in the week such shift was worked and, instead, compensate these hours at a later date and at a straight time rate.

11.     Further, Defendant failed to compensate New York employees for a spread of hours premium for workdays lasting longer than 10 hours.

12.     Defendant's improper pay practices are designed to, and in fact do, result in a windfall of improperly retained unpaid compensation owed to Plaintiffs, collective plaintiffs, and class members.

13.     Due to the underpayments made by Defendant from the violation described above, Plaintiffs bring this wage and hour class action on behalf of themselves and collective and putative class members, pursuant to the FLSA and the laws and regulations passed in the District of Columbia and the following states:

1)  Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

2)  Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

3) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

4) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

5) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

6) Florida: Florida's Minimum Wage Acts, Fla. Stat. 448.08 *et seq.*;

7) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

8) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

9) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

10) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

11) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

12) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

13) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

14) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

15) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

16) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60;

17) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

18) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

19) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

20) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*, Ohio Const. art. II, § 34a;

21) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

22) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

23) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

24) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

25) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

26) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*; and

27) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*

14.      Plaintiffs bring this wage and hour class action on behalf of themselves and all similarly situated employees, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and the laws and regulations of the relevant States in which Defendant conducts business.

## JURISDICTION AND VENUE

15.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

16.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

17.      Plaintiff YVETTE WALKER is a resident of Kings County, New York.

18.      Plaintiff ALFONSO RUBIO is a resident of San Diego County, California.

19.      Plaintiff ORLANDO COTTMAN is a resident of Philadelphia County, PA.

20.      At all times relevant herein, Defendant was and is a corporation duly organized under and existing by virtue of the laws of the State of New York, with its headquarters located at 1 Blue Hill Plaza, Pearl River, NY 10965 and an address for service of process listed as C/O C T Corporation System 28 Liberty Street, New York, NY 10005.

21.      Defendant BROSNAN RISK CONSULTANTS, LTD. operates all the sites for which it provides security services through the same executive management team, from the same

headquarters with the same policies and procedures.  Each site is engaged in related activities, share common ownership, and have a common business purpose:

    a)   Defendant BROSNAN RISK CONSULTANTS, LTD. maintain a centralized labor relations and human resources managing employees working at any site for which they provide security services.  For instance, BROSNAN RISK operates a single career page allowing interested persons to apply to positions relating to all sites at which Defendant offers services.  Despite listing open positions at all sites, BROSNAN RISK's career page only offers administrative positions such as human resource positions and legal positions at a single location, BROSNAN RISK's NY Headquarters.  *See* **Exhibit A.**

    b)   BROSNAN RISK maintains the same website, where visitors can obtain information concerning BROSNAN RISK's news, information and updates concerning BROSNAN RISK's corporate affairs. *See* **Exhibit B**.

    c)   Employees are interchangeable among Defendant's sites.  Defendant frequently transfer employees to different sites during their employment.  In fact, Plaintiff YVETTE WALKER worked at over five (5) locations throughout New York during her employment.

22.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendant.

## MULTISTATE - FLSA COLLECTIVE ACTION ALLEGATIONS

23.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees employed by Defendant, (including security guards, patrol officers, fire safety officers, fire guards, security

concierges, vehicle patrol officers) employed by Defendant in any state where they do business on or after the date that is three (3) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

24.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiffs and other FLSA Collectives for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendant's policies of time shaving. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

25.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

26.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees of by Defendant, (including security guards, patrol officers, fire safety officers, fire guards, security concierges, vehicle patrol officers) employed by Defendant in any State where they do business on or after the date that is six (6) years, or the relevant statutory period of each State as applicable by law, before the filing of the Complaint in this case (the "Class Period").

27.     To the extent necessary, Plaintiffs will designate subclasses for each of the States where Defendant has employees, including potential designation of Plaintiff WALKER as representative for New York Class members, Plaintiff RUBION as representative for California Class members, and Plaintiff COTTMAN as representative for Pennsylvania Class members.

28.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

29.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendant. There is no doubt that there are more than forty (40) members of the Class. The members of potential subclass employees total over forty (40) in each of the states where Defendant has employees, including the States of New York.

30.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay for all hours worked including overtime premiums, due to Defendant's practice of time-shaving and (ii) failing to pay overtime premiums for, due to Defendant's practice of paying unscheduled overtime hours at a straight rate.

Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

31.    Plaintiff WALKER on behalf of a subclass of employees who worked or are working in New York ("New York Subclass") suffered additional damages. Plaintiff WALKER's claims are typical of those claims, which could be alleged by any member of the New York Subclass. All Subclass members were subject to the same corporate practices resulting in the following violations:, (i) failing to pay employees weekly, (ii) failing to provide spread-of-hours premium; (iii) failing to provide Subclass members with proper wage statements with every payment of wages; and (iv) failing to properly provide wage notices to Subclass members, at date of hiring and annually, per requirements of New York Labor Law. Plaintiff WALKER and other Subclass members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32.    Plaintiff RUBIO on behalf of a subclass of employees who worked or are working in California ("California Subclass") suffered additional damages. Plaintiff RUBIO's claims are typical of those claims, which could be alleged by any member of the California Subclass. All Subclass members were subject to the same corporate practices resulting in the following violations:, (i) failing to provide compensation for missed rest breaks, (ii) failing to maintain and provide Subclass members with accurate wage statements with every payment of wages; (iii) failing to properly provide wage notices to Subclass members, at date of hiring and annually, per requirements of California Labor Law, and (iv) failing to provide overtime for all hours worked in workdays lasting longer more than eight hours. Plaintiff RUBIO and other Subclass members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

33.     Plaintiff COTTMAN on behalf of a subclass of employees who worked or are working in Pennsylvania ("Pennsylvania Subclass") suffered additional damages.  Plaintiff COTTMAN's State law claims are typical of those claims suffered by all Class members and could be alleged by any member of the Pennsylvania Subclass.  Plaintiff COTTMAN and other Subclass members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

34.     Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

35.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to

redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37.     Defendant and other employers throughout the country violate State Labor Laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendant employed Plaintiffs and the Class within the meaning of each relevant State's Labor Laws;

b.     What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not properly pay Plaintiffs and the Class members;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiffs and the Class members for their work;

d.  Whether Defendant properly notified Plaintiffs and Class members of hourly rate and overtime rate;

e.  Whether Defendant provided proper wage notices, at date of hiring and annually thereafter, informing Plaintiff WALKER and New York Subclass members of their proper rates of compensation and other information required to be provided on wage notice, as required under New York Labor Law;

f.  Whether Defendant provided Plaintiff WALKER and New York Subclass proper wage statements with each payment of wages, as required under New York Labor Law;

g.  Whether Defendant timely compensated Plaintiff WALKER and New York Subclass properly under New York Labor Law;

h.  Whether Defendant properly compensated Plaintiff WALKER and New York Subclass their spread of hours premium;

i.  Whether Defendant properly compensated Plaintiff RUBIO and California Subclass for any missed rest breaks;

j.  Whether Defendant maintained and provided Plaintiff RUBIO and California Subclass accurate wage statements with each payment of wages, as required under California Labor Law;

k.  Whether Defendant provided proper wage notices, at date of hiring and annually thereafter, informing Plaintiff RUBIO and California Subclass members of their

proper rates of compensation and other information required to be provided on wage notice, as required under California Labor Law;

l.    Whether Defendant properly remitted all overtime hours for days of work lasting longer than eight hours to Plaintiff RUBIO and California Subclass;

m.    Whether Defendant properly compensated Plaintiffs and Class members for all hours worked, including overtime hours; and

n.    Whether Defendant properly compensated Plaintiffs and Class members for owed statutory premiums.

## **STATEMENT OF FACTS**

*Individual Claims of Plaintiff YVETTE WALKER:*

39.    In November 2017, Plaintiff WALKER was hired by Defendant to work as a security guard and was assigned to perform duties at six (6) different locations operated by Defendant's clients.  The locations at which Plaintiff WALKER performed work included the following:

i.    128 East Fordham Road, Bronx, NY 10468 – Citibank;

ii.    885 Flatbush Avenue, Brooklyn, NY 11226 – Citibank;

iii.    164 Canal Street, New York, NY 10013 – Citibank;

iv.    Two (2) Chase bank branches in Manhattan; and

v.    5100 Kings Plz, Brooklyn, NY 11234 – Kings Plaza Mall.

40.    Plaintiff WALKER was employed with Defendant as a security guard until May 20, 2022.

41.     During Plaintiff WALKER's employment, Plaintiff WALKER was always scheduled to work shifts lasting exactly eight-and-one half (8.5) hours with a thirty-minute lunch break, and regularly worked over forty (40) hours in a week as may be seen from her paystubs.

42.     Despite being scheduled to work forty (40) hours a week, Plaintiff WALKER worked greater hours each week which she knows were not included in her compensable time.

43.     At the start of her employment, Plaintiff WALKER was to be paid at a rate of $14.50 per hour and at the end of her employment Plaintiff WALKER was paid at a rate of $17.00 an hour.

_Individual Claims of Plaintiff ALFONSO RUBIO:_

44.     In early 2021, Plaintiff RUBIO was hired by Defendant to work as a Security Guard and was assigned to perform duties at a Citibank in Downtown, San Diego, California.  Plaintiff RUBIO's employment with Defendant terminated after eight (8) months.

45.     During Plaintiff RUBIO's employment, Plaintiff RUBIO worked six (6) days a week with a regular work schedule of Mondays to Saturday from 8:30 a.m. to 5:00 p.m. with a thirty-minute lunch break.  Despite being scheduled to work forty-eight (48) hours, Plaintiff RUBIO worked more than his scheduled hours, for which he was not compensated.

46.     Plaintiff RUBIO was to be paid at a base rate of approximately $18.00 per hour.

47.     Moreover, on three (3) occasions during Plaintiff RUBIO's employment, Plaintiff RUBIO worked an additional shift to his scheduled hours, which would not be compensated with the rest of his pay for the week in which that additional shift was worked, but two weeks later and at a straight time rate despite the hours being overtime hours.

_Individual Claims of Plaintiff ORLANDO COTTMAN:_

48.     In June 2016, Plaintiff COTTMAN was hired by Defendant to work as a Security Guard and was assigned to perform duties at a Walmart located at 1675 S Christopher Columbus Blvd, Philadelphia, PA 19148.  Plaintiff's employment with Defendant terminated after four (4) years.

49.     During Plaintiff COTTMAN's employment, Plaintiff COTTMAN worked six (6) days a week with a regular work schedule of Mondays to Saturday from 3:00 p.m. to 12:00 a.m. with a thirty-minute lunch break.  Despite being scheduled to work forty-two-and-one-half (42.5) hours, once a lunch break was deducted, Plaintiff COTTMAN worked greater hours which he knows were not included in his compensable hours for his weeks of employment.

50.     Plaintiff COTTMAN was to be paid at a base rate of approximately $15.00 per hour.

51.     Moreover, once a week during Plaintiff COTTMAN's employment, Plaintiff COTTMAN worked an additional shift to his scheduled hours, which would not be compensated with the rest of his pay for the week in which that additional shift was worked, but two weeks later and at a straight time rate despite the hours being overtime hours.

*Plaintiffs' and Class Members' Wage Claims:*

52.     Defendant designed the schedule of their employees' shifts to run "back-to-back." For example, if a site requires 24-hour period, one guard could be scheduled to the site from midnight to 8:00 a.m., the second guard from 8:00 a.m. to 4:00 p.m., and the final guard from 4:00 p.m. to midnight.  Despite Defendant's schedule not envisioning any overlap between employees, Defendant required security guards to ensure a "relief" guard arrived and was fully debriefed before leaving their post.  As Defendant only paid for scheduled shifts and/or rounded employees' time, this overlapping period between security personnel was always unpaid.  Defendant requires

employees to stay past their shift to (i) wait for the incoming employee to arrive on site, and (ii) then require the departing employee to debrief the arriving employee before leaving.   Moreover, security guards working at sites catering to customers were required to stay on site, after their scheduled shifts until the last customer exited the building.  This additional wait time, like the wait time for a relief guard, went uncompensated.

53.    Plaintiffs, FLSA Collective Plaintiffs, and Class members, were all similarly not compensated for this after scheduled hours work time.  Plaintiffs, FLSA Collective Plaintiffs, and Class members were similarly undercompensated for 15 minutes per shift.   For Plaintiff WALKER, who worked at least 5 days each week, the after-shift work resulted in an hour and fifteen minutes of uncompensated time each week. For Plaintiff RUBIO and Plaintiff COTTMAN, who worked at least 6 days each week, the after-shift work resulted in an hour and thirty minutes of uncompensated time each week.  All Plaintiffs experienced uncompensated end-of-shift time waiting for a relief guard and uncompensated time waiting past their shift for customers to exit their assigned locations.

54.    Throughout their employment with Defendant regardless of location worked, Plaintiffs were not compensated for all hours worked due to Defendant's impermissible policy of forcing employees to clock-out for lunch, but never permitting Plaintiffs and other employees to take a free and clear lunch break. Plaintiffs, FLSA Collective Plaintiffs and Class members were forced to eat either at, or near, their workstations and through lunch despite Defendant's requiring employees to clock-out. Plaintiffs, FLSA Collective Plaintiffs and Class members suffered from uncompensated lunch time that they were forced to work through.

55.    Plaintiffs, FLSA Collective Plaintiffs, and Class members, were all similarly not compensated for these supposed lunch breaks.  Plaintiffs, FLSA Collective Plaintiffs, and Class

members were similarly undercompensated for 30 minutes per shift.  For Plaintiff WALKER, who worked at least 5 days each week, the uncompensated lunch breaks resulted in at least two and a-half hours of uncompensated time each week. For Plaintiff RUBIO and Plaintiff COTTMAN, who worked at least 6 days each week, the uncompensated lunch breaks resulted in at least three hours of uncompensated time each week.

56.     Further, Defendant violated the FLSA's "bright line time test" pursuant to 29 C.F.R. 758.18 that breaks of 20 minutes or less must be compensated. *See Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007, *6 (S.D.N.Y. Jan. 5, 2012) ("the Court finds, as a matter of law, that breaks of less than twenty minutes are compensable") (emphasis added); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 121 (S.D.N.Y. 2011) ("Rest periods of short duration must be counted as hours worked.") (citing 29 C.F.R. § 785.18); *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017) ("[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18.") (citation omitted). Throughout their employment with Defendant and regardless of location worked, Plaintiffs, FLSA Collective Plaintiffs, and Class members would, on a weekly basis, take at least one short rest breaks of under 20 minutes. However, they were never compensated for this time.

57.     Further, Defendant failed to satisfy the rest period obligation for Plaintiff RUBIO and California Subclass members, pursuant to CA Labor Code § 226.7(f)(1), and are owed one additional hour of pay at Plaintiff and Subclass members' regular base hourly rate of compensation.

58.    Additionally, Defendants had a policy of paying 'pick-up' shifts, a shift worked in addition to an employee's regular schedule, on a later paycheck than the paycheck providing compensation for the week in which that pick-up shift was worked.  When Defendants provided the payment for the hours worked during a pick-up shift, the hours would always be compensated at a straight time rate, even when the hours were overtime hours in the week worked.  Plaintiff RUBIO and Plaintiff COTTMAN both worked pick-up shifts, which should have been compensated at an overtime rate, but was instead compensated at a straight time rate.

59.    Throughout Plaintiff WALKER's employment, Defendant regularly failed to pay Plaintiff WALKER and the New York Subclass members' wages within seven (7) days of the end of the week in which Plaintiff WALKER and the New York Subclass members earned them, in violation of NYLL § 191(1)(a)(i). Defendant would provide Plaintiff WALKER and the New York Subclass members their wages biweekly despite the NYLL requiring employees like Plaintiff WALKER and the New York Subclass members be compensated on a weekly basis. Therefore, Plaintiff WALKER and the New York Subclass members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

60.    Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis. Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor. Here, all employees who worked in New York State were paid bi-weekly regardless of position or duties.

61.    Further, manual workers generally include those employees, like Plaintiff WALKER and the New York Subclass members, whose labor is easily interchangeable with other able-bodied individuals.  As workers earning only slightly above minimum wage, the jobs market

19

itself demonstrates the interchangeability of Plaintiff WALKER and the New York Subclass members. NYLL §191 was passed to protect individuals in the types of low-wage, interchangeable jobs occupied by Plaintiff WALKER and the New York Subclass members. Plaintiff WALKER and the New York Subclass hold positions with Defendant that are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement and low-wages of Plaintiff WALKER and the New York Subclass members make them dependent upon their weekly earnings. This dependence and lack of job security places Plaintiff WALKER and the New York Subclass members directly in the category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

62.    That Plaintiff WALKER and the New York Subclass members were engaged in easily trained, easily replaceable positions is clearly demonstrated by their earnings. At the start of her employment, Plaintiff WALKER earned $17.00 an hour, a figure lower than the average individual employed in New York State as a janitor, pest control worker, tree trimmer, lawn supervisor, or waiter.[1] Employees in those positions in New York State earned over $19.00 an hour on average. The jobs market itself demonstrates that Plaintiff WALKER and the New York Subclass members, who worked in New York City for $17.00 an hour, was not employed in a highly skilled position. Given the low-wages of the Plaintiff WALKER and the New York Subclass members and realities of the Class's daily work, New York Subclass members must be afforded the protections provided under NYLL §191.

63.    Due to Defendant's improper, untimely bi-weekly payments, Plaintiff WALKER would struggle to timely pay her own bills. Plaintiff WALKER would be forced to pay bills late

---

[1] https://www.bls.gov/oes/current/oes370000.htm; https://www.bls.gov/oes/current/oes353031.htm#st.

as she waited for her owed compensation to become available. New York Subclass members would similarly struggle to timely pay debts due to Defendant's untimely compensation policies.

64.    Plaintiff WALKER often worked shifts which would last over ten hours. However, Plaintiff WALKER was never compensated with spread of hours premium for the days she worked in excess of ten (10) hours, such as with a double shift. Similarly, New York Subclass members were not compensated with their spread of hours premiums when working shifts of more than ten (10) hours.

65.    Defendant failed to provide Plaintiff WALKER and the New York Subclass members with proper wage statements because they failed to accurately reflect the employees' hours worked, due to Defendant's policy of time shaving and due to a policy of failing to include overtime hours for pick-up shifts in an employee's hours.

66.    Defendant failed to provide Plaintiff WALKER and the New York Subclass members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiffs did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of NYLL.

67.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff WALKER's interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices and wage statements function as a means of apprising employees of their rights and of their employer's obligations

towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

68.    Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff WALKER and New York Subclass members.  Defendant's conduct actually harmed Plaintiff WALKER and New York Subclass members.  Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff WALKER and New York Subclass members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff WALKER and New York Subclass members' rights.  This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees.  Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

69.    Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff WALKER and the New York Subclass members.  This delayed payment caused Plaintiff WALKER to struggle to timely pay bills.  New York Subclass members similarly struggle to timely pay debts due to Defendant's continued attempts to hide wrongdoing from employees.

70. Throughout Plaintiff RUBIO's employment, Defendant regularly failed to satisfy the rest period obligation, as required by California Labor Law.

71. Defendant failed to provide Plaintiff RUBIO and the California Subclass members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff RUBIO did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of California Labor Law.

72. Defendant failed to provide Plaintiff RUBIO and the California Subclass members with proper wage statements because they failed to accurately reflect the employees' hours worked, due to Defendant's policy of time shaving and due to a policy of failing to include overtime hours for pick-up shifts in an employee's hours.

73. Defendant knowingly and willfully failed to pay Plaintiffs, FLSA Collective Plaintiffs, and the Class regular and overtime wages for all hours worked due to Defendant's time-shaving practices.

74. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendant failed to pay them the proper overtime premium rate of one-and-half times of their regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of FLSA and State wage laws.

75. Due to these unlawful acts, Plaintiffs, FLSA Collective Plaintiffs, and Class members suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiffs are entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action.

76.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

77.     Plaintiffs reaver and reallege by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

78.     At all relevant times, Defendant was and continues to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

79.     At all relevant times, Defendant employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

80.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.

81.     At all relevant times, Defendant had a policy and practice of failing to pay wages for all hours worked.

82.     At all relevant times, Defendant willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to time-shaving.

83.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiffs intend to obtain these records by

24

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due. Defendant knowingly and willfully disregarded the provisions of FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked when Defendant knew or should have known such was due.

84.    At all relevant times, Defendant had a policy and practice of failing to pay the proper overtime premium to FLSA Collective Plaintiffs for their hours worked.

85.    Defendant failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

86.    As a direct and proximate result of Defendant's willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

87.    Due to the intentional, willful and unlawful acts of Defendant, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS

### (brought on behalf of a Rule 23 Class)

88.    Plaintiffs reallege and reaver by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

89.    At all relevant times, Class Members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiffs were employed by Defendant under the meaning of the FLSA.

90.    Plaintiffs can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of their overtime class claims.

91.    Defendant knowingly and willfully violated Plaintiffs and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to timeshaving, in violation of the state wage and labor laws outlined above.

92.    Defendant knowingly and willfully failed to provide proper wage statements and notices to Class Members, as required under the laws of New York State, California, and Minnesota.

93.    Due to Defendant's state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

94.    In addition to violations of State Labor overtime laws under which Plaintiffs bring class (not individual) claims, Defendants violated State provisions requiring employers to pay employees all wages owed.  Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements.  These state law provisions include, but are not limited to, the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his

employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

**(a)** Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

**(b)** Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C)

95.     The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a).  However, Plaintiff invokes the Florida Minimum Wage Act not in their individual capacity but to bring class claims on behalf of Class members residing in Florida. Thus, Plaintiffs personally were not required to provide Defendant with a pre-suit notice, since he does not personally claim damages under Florida law.  As to the absent Florida Class members, courts in

Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

96.     The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc*., 667 F.3d 273, 310 (3rd Cir. 2011).

97.     Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.   Any state restrictions on class actions are irrelevant, however, as this case is filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to

Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiff's claims, and Plaintiff's claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

98.     Due to Defendant's state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT III

## <u>VIOLATION OF NEW YORK LABOR LAW</u>

99.     Plaintiff WALKER reavers and realleges by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

100.    At all relevant times, Plaintiff WALKER and New York Subclass members were employed by Defendant within the meaning of New York Labor Law, §§ 2 and 651.

101.    At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiff WALKER and New York Subclass Members for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendant's policy of time-shaving.

102.    Furthermore, Defendant willfully violated Plaintiff WALKER and New York Subclass members' rights by refusing to compensate them for off-the-clock hours during which they were required to work.

103.    Defendant failed to provide a proper wage and hour notice, on the date of hiring and annually, to Plaintiff WALKER and New York Subclass members, in direct violation of New York Labor Law.

104.    Defendant willfully violated Plaintiff WALKER and New York Subclass members' rights by failing to pay spread-of-hours premium to Plaintiff WALKER and Class members for each workday that exceeded ten (10) hours in length.

105.    Defendant failed to provide proper wage statements with every payment issued to Plaintiffs and New York Subclass Members, as required by New York Labor Law § 195(3).

106.    Defendant willfully violated Plaintiff WALKER's and New York Subclass members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

107.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendant is required to provide itemized listings of deductions taken on each wage statement. Moreover, with respect to all employees, Defendant failed to provide wage statements that satisfied statutory requirements under the NYLL because Defendant failed to disclose the proper overtime hours worked.

108.    Due to Defendant's New York Labor Law violations, Plaintiff WALKER and New York Subclass members are entitled to recover from Defendant unpaid wages, including overtime, due to time-shaving, unpaid spread-of-hours premium, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT IV**

## VIOLATION OF CALIFORNIA LABOR LAW

109.    Plaintiff RUBIO reavers and realleges by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

110.    At all relevant times, Plaintiff RUBIO and California Subclass members were employed by Defendant within the meaning of California Labor Code § 3351.

111.    At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiff RUBIO and California Subclass Members for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendant's policy of time-shaving.

112.    Furthermore, Defendant willfully violated Plaintiff RUBIO and California Subclass members' rights by refusing to compensate them for off-the-clock hours during which they were required to work.

113.    Defendant failed to provide a proper wage and hour notice, on the date of hiring and annually, to Plaintiff RUBIO and California Subclass members, in direct violation of California Labor Law.

114.    Defendant also violated Plaintiff RUBIO and California Subclass members' rights by not ensuring uninterrupted rest periods during their employment and not compensating Plaintiff RUBIO and California Subclass members their statutory premium.

115.    Defendant failed to provide proper wage statements with every payment issued to Plaintiff RUBIO and California Subclass Members, as required by California Labor Code § 2810.5.

116.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage statements as required under California Labor Law.  Defendant is required

to provide itemized listings of deductions taken on each wage statement. Moreover, with respect to <u>all</u> employees, Defendant failed to provide wage statements that satisfied statutory requirements under the California Labor Law because Defendant failed to disclose the proper overtime hours worked.

117.   Due to Defendant's California Labor Law violations, Plaintiff RUBIO and California Subclass members are entitled to recover from Defendant unpaid wages, including overtime, due to time-shaving, unpaid overtime premium, statutory penalties for missed rest breaks, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to California Labor Law.

**COUNT V**

**<u>VIOLATION OF PENNSYLVANIA LABOR LAW</u>**

118.   Plaintiff COTTMAN reavers and realleges by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

119.   At all relevant times, Plaintiff COTTMAN and Pennsylvania Subclass members were employed by Defendant within the meaning of Pennsylvania Minimum Wage Act §§ 231.1 and 231.11.

120.   At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiff COTTMAN and Pennsylvania Subclass Members for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendant's policy of time-shaving.

121.   Furthermore, Defendant willfully violated Plaintiff COTTMAN and Pennsylvania Subclass members' rights by refusing to compensate them for off-the-clock hours during which they were required to work.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and State wage laws;

b.  An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime compensation, due to Defendant's improper policies under the FLSA and State wage laws;

d.  An award of unpaid spread-of-hours premium due under the FLSA and New York State wage laws;

e.  An award of statutory penalties as a result of Defendant's failure to comply with wage notice and wage statement requirements under FLSA and California, Minnesota, and New York wage laws;

f.  An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wage, overtime compensation, and statutory penalties pursuant to the FLSA and State wage laws;

g.  An award of prejudgment and post-judgment interest, costs and expenses of this action, together with reasonable attorney's and expert fees and statutory penalties;

h.  Designation of Plaintiffs as Representative of FLSA Collective Plaintiffs;

i.  Designation of this action as a class action pursuant to F.R.C.P. 23;

j.    Designation of Plaintiffs as Representative of the Class and any Subclass; and

k.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: May 10, 2023                         Respectfully submitted,

                                            By: ___/s/ C.K. Lee_____
                                                   C.K. Lee, Esq.

                                            LEE LITIGATION GROUP, PLLC
                                            C.K. Lee (CL 4086)
                                            Anne Seelig (AS 3976)
                                            148 West 24th Street, Eighth Floor
                                            New York, NY 10011
                                            Tel.: 212-465-1180
                                            Fax: 212-465-1181
                                            *Attorneys for Plaintiffs, FLSA Collective
                                            Plaintiffs and the Class*